

# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>CAROLYN C WHITTINGTON | Case Number: 11SL-CC05052 | |
|---|---|---|
| Plaintiff/Petitioner:<br>CRITCHFIELD PHYSICAL THERAPY PC<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>MAX GEORGE MARGULIS<br>28 OLD BELLE MONTE ROAD<br>CHESTERFIELD, MO 63017 | JAN 17 2012 |
| Defendant/Respondent:<br>TECHHEALTH INC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>7900 CARONDELET AVE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Injunction | | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

| | |
|---|---|
| **The State of Missouri to: TECHHEALTH INC**<br>Alias: | |
| 515 EAST PARK AVENUE<br>TALLAHASSEE, FL 32301 | SERVE REGISTERED AGENT<br>CORPDIRECT AGENTS INC |

**COURT SEAL OF**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

03-JAN-2012
Date
Further Information:
TLC

_____ Clerk

**ST. LOUIS COUNTY**

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by: (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐ other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)   ☐ the clerk of the court of which affiant is an officer.
                                ☐ the judge of the court of which affiant is an officer.
                                ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                                ☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

_____
Signature and Title

### Service Fees, if applicable
| | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ ( _____ miles @ $ _____ per mile) |
| Total | $_____ |

See the following page for directions to clerk and to officer making return on service of summons.



## Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.



STATE OF MISSOURI )
)
ST. LOUIS COUNTY )

**IN THE CIRCUIT COURT OF THE ST. LOUIS COUNTY**
**STATE OF MISSOURI**

CRITCHFIELD PHYSICAL THERAPY, P.C.,
individually and on behalf of all others similarly-
situated,

      Plaintiff,

v.

TECHHEALTH, INC.,
     Serve:  CorpDirect Agents, Inc.,
             Registered Agent
             515 East Park Avenue
             Tallahassee, FL 32301
             Leon County

      Defendant.

Cause No.

Division

PROCESS SERVER

## CLASS ACTION PETITION

Plaintiff, CRITCHFIELD PHYSICAL THERAPY, P.C. ("Plaintiff"), brings this action on

behalf of itself and all others similarly situated, through its attorneys, and except as to those

allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal

knowledge, alleges the following upon information and belief against Defendant, TECHHEALTH,

INC., ("Defendant"):

## PRELIMINARY STATEMENT

1.    This case challenges Defendant's practice of sending unsolicited facsimiles.

2.    The federal Telephone Consumer Protection Act, 47 USC § 227 ("TCPA"),

prohibits a person or entity from sending or having an agent send fax advertisements without the

1

recipient's prior express invitation or permission ("junk faxes" or "unsolicited faxes"). The TCPA provides a private right of action and provides statutory damages of $500 per violation.

3.     Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax interrupts the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4.     On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the TCPA, the common law of conversion, and the consumer protection statutes forbidding and compensating unfair business practices.

5.     Plaintiff seeks an award of statutory damages for each violation of the TCPA and a declaration that defendant's conduct violated the TCPA.

## JURISDICTION AND PARTIES

6.     This court has personal jurisdiction over Defendant because Defendant transacts business within this state, have made contracts within this state, and/or have committed tortious acts within this state and otherwise have sufficient minimum contacts with the State of Missouri. Further, the amount in controversy is less than $75,000.00 per class member. This Court has exclusive jurisdiction over this case pursuant to 47 U.S.C. §227(b)(3).

7.     Federal jurisdiction does not exist because no federal question or claim is asserted and Plaintiff's individual claims are worth less than $75,000.00, inclusive of all forms of damages

2

and fees. Plaintiff expressly disclaims any individual recovery in excess of $74,999.00, inclusive of all forms of damages and fees.

8.     Plaintiff CRITCHFIELD PHYSICAL THERAPY, P.C., is a Missouri limited liability company with its principal place of business in Missouri.

9.     Defendant, TECHHEALTH, INC., is a corporation with its principal place of business in Florida.

## FACTS RELEVANT TO ALL COUNTS

10.     Between the dates of January 6, 2009 and March 31, 2009 Defendant sent 2 unsolicited facsimiles to Plaintiff in Montgomery County, Missouri. A true and correct copy of the facsimiles are attached as Exhibits 1 – 2.

11.     Defendant approved, authorized and participated in the scheme to broadcast faxes by (a) directing a list to be purchased or assembled; (b) directing and supervising employees or third parties to send the faxes; (c) creating and approving the form of fax to be sent; and (d) determining the number and frequency of the facsimile transmissions.

12.     Defendant created or made Exhibits 1 – 2, which Defendant distributed to Plaintiff and the other members of the class.

13.     Exhibits 1 – 2 are a part of Defendant's work or operations to market Defendant's goods or services which was performed by Defendant and/or on behalf of Defendant.

14.     Exhibits 1 – 2 constitute material furnished in connection with defendant's work or operations.

15.     Exhibits 1 – 2 hereto is material advertising the commercial availability of any property, goods, or services.

3

16.     The transmissions of Exhibits 1 – 2 to Plaintiff did not contain a notice that informs the recipient of the ability and means to avoid future unsolicited facsimiles.

17.     The transmissions of Exhibits 1 – 2 to Plaintiff did not contain a notice that states that the recipient may make a request to the sender of the facsimiles not to send any future facsimiles to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(3)(v) of this section is unlawful.

18.     The transmissions of Exhibits 1 – 2 to Plaintiff did not contain at the top or bottom of the first page, the correct date and time it was sent and an identification of the entity sending the message and the telephone number of the sending machine or of such entity.

19.     The transmissions of Exhibits 1 – 2 to Plaintiff did not contain a notice that complied with the provisions of 47 U.S.C. § 227(b)(1)(C) and/or 47 C.F.R. 64.1200(a)(3).

20.     The transmissions of Exhibits 1 – 2 to Plaintiff was required to contain a notice that complied with the provisions of 47 U.S.C. § 227(b)(1)(C) and/or 47 C.F.R. 64.1200(a)(3).

21.     Plaintiff had not invited or given permission to Defendant to send facsimiles.

22.     Plaintiff did not have an established business relationship with Defendant.

23.     On information and belief, Defendant sent multiple unsolicited facsimiles to Plaintiff and members of the proposed classes throughout the time period covered by the class definitions.

24.     On information and belief, Defendant faxed the same and similar facsimiles to the members of the proposed classes in Missouri and throughout the United States without first obtaining the recipients' prior express permission or invitation.

4

25.    There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unlawful faxes.    Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

26.    Defendant knew or should have known that:    (a) Exhibits 1 – 2 was an advertisement; (b) Defendant did not obtain prior permission or invitation to send Exhibits 1 – 2; (c) Defendant did not have an established business relationship with Plaintiff or the other members of the class and (d) Defendant did not display a proper opt out notice on Exhibits 1 – 2.

27.    Defendant engaged in the transmission of Exhibits 1 – 2 believing such transmissions were legal based on Defendant's own understanding of the law and/or based on the representations of others on which Defendant reasonably relied.

28.    Defendant did not intend to send transmissions Exhibits 1 – 2 to any person where such transmission was not authorized by law or by the recipient, and to the extent that any transmissions of Exhibits 1 – 2 were sent to any person and such transmission was not authorized by law or by the recipient, such transmission was made based on either Defendant's own understanding of the law and/or based on the representations of others on which Defendant reasonably relied.

29.    Defendant failed to correctly determine the legal restrictions on the use of facsimile transmissions and the application of those restrictions to the transmission of Exhibits 1 – 2 both to others in general, and specifically to Plaintiff.

30.    The transmissions of Exhibits 1 – 2 to Plaintiff caused destruction of Plaintiff's property.

31.    The transmissions of Exhibits 1 – 2 to Plaintiff interfered with Plaintiff's exclusive use of Plaintiff's property.

32.    The transmissions of Exhibits 1 – 2 to Plaintiff interfered with Plaintiff's business and/or personal communications.

<u>COUNT I</u>
<u>TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227</u>

33.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

34.    Plaintiff brings Count I pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes, (4) with whom Defendant does not have an established business relationship and (5) which did not display a proper opt out notice.

35.    A class action is warranted because:

a.    On information and belief, the class includes more than forty persons and is so numerous that joinder of all members is impracticable.

b.    There are questions of fact or law common to the class predominating over questions affecting only individual class members, including without limitation:

i.    Whether Defendant engaged in a pattern of sending unsolicited fax advertisements;

ii.    Whether Exhibits 1 – 2 contains material advertising the commercial availability of any property, goods or services;

6

    iii.     The manner and method Defendant used to compile or obtain the list of fax numbers to which they sent Exhibits 1 – 2 and other unsolicited faxed advertisements;

    iv.     Whether Defendant faxed advertisements without first obtaining the recipients' prior express permission or invitation;

    v.     Whether Defendant violated the provisions of 47 USC § 227;

    vi.     Whether Plaintiff and the other class members are entitled to statutory damages;

    vii.     Whether Exhibits 1 – 2 displayed each required element of the opt out notice required by 64 C.F.R. 1200;

    viii.     Whether Exhibits 1 – 2 displayed each required element of the date, time, and identification required by 47 USC § 227;

    ix.     Whether Defendant's acts were "knowing" as that term is used in 47 USC § 227;

    x.     Whether Defendant should be enjoined from faxing advertisements in the future; and

    xi.     Whether the Court should award trebled damages.

    36.    Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff's counsel are experienced in handling class actions and claims involving unsolicited advertising faxes. Neither Plaintiff nor Plaintiff's counsel has any interests adverse or in conflict with the absent class members.

37.     A class action is the superior method for adjudicating this controversy fairly and efficiently. The interest of each individual class member in controlling the prosecution of separate claims is small and individual actions are not economically feasible.

38.     The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine...." 47 U.S.C. § 227(b)(1).

39.     The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

40.     The TCPA provides:

> Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> (A)     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B)     An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater,
>
> or
>
> (C)     Both such actions.

41.     The Court, in its discretion, may treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

42.     The TCPA is a strict liability statute and the Defendant is liable to Plaintiff and the other class members even if its actions were only negligent.

43.     Defendant's actions caused damages to Plaintiff and the other class members. Receiving Defendant's junk faxes caused the recipients to lose paper and toner consumed in the

printing of Defendant's faxes. Moreover, Defendant's actions interfered with Plaintiff's use of its fax machine and telephone line connected to that fax machine. Defendant's faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendant's unlawful faxes. That time otherwise would have been spent on Plaintiff's business activities. Finally, Defendant's faxes unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone.

44.     Defendant did not intend to cause damage to Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to interfere with recipients' fax machines or consume the recipients' valuable time with Defendant's advertisements.

45.     If the court finds that Defendant knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under subparagraph (B) of this paragraph. 47 U.S.C. § 227(b)(3).

46.     Defendant knew or should have known that: (A) Plaintiff and the other class members had not given express permission or invitation for Defendant or anyone else to fax advertisements about Defendant's goods or services, (B) Defendant did not have an established business relationship with Plaintiff and the other members of the class, (C) Exhibits 1 – 2 were advertisements, and (D) Exhibits 1 – 2 did not display the proper opt out notice.

47.     Defendant violated 47 U.S.C. § 227 et seq. by transmitting Exhibits 1 – 2 hereto to Plaintiff and the other members of the class without obtaining their prior express permission or invitation and not displaying the proper opt out notice required by 64 C.F.R. 1200.

48.     Defendant's actions caused damages to Plaintiff and the other class members, because their receipt of Defendant's unsolicited fax advertisements caused them to lose paper and toner consumed as a result. Defendant's actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendant were using Plaintiff's fax machine for Defendant's unauthorized purpose. Defendant's actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing and reviewing Defendant's unauthorized faxes and that time otherwise would have been spent on Plaintiff's business activities. Finally, the injury and property damage sustained by Plaintiff and the other members of the class occurred outside of Defendant's premises. Pursuant to law, Plaintiff, and each class member, instead may recover $500 for each violation of the TCPA.

WHEREFORE, Plaintiff, CRITCHFIELD PHYSICAL THERAPY, P.C., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant, TECHHEALTH, INC., as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award $500.00 in damages for each and every violation of the TCPA;

C.     That the Court enter an injunction prohibiting the Defendant from engaging in the statutory violations at issue in this action;

D.     That the Court declare that Defendant's conduct violated the TCPA and that this action is just and proper;

E.     That the Court award costs and such further relief as the Court may deem just and proper, but in any event, less than $75,000.00 per individual, inclusive of all damages and fees;

F.     That the Court award pre-judgment and post-judgment interest at the statutory rate of 9%; and

G.     That the Court award plaintiff its attorney fees and all expenses incurred in preparing and prosecuting this claim.

<u>COUNT II</u>
<u>CONVERSION</u>

49.    Plaintiff incorporates Paragraphs 3 and 4, and 10 through 32 as for its paragraph 49.

50.    In accordance with Mo. S. Ct. Rule 52.08, Plaintiff brings Count II for conversion under the common law for the following class of persons:

> All persons who on or after five years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendant with respect to whom Defendant cannot provide evidence of prior express permission or invitation.

51.    A class action is proper in that:

a.     On information and belief the class is so numerous that joinder of all members is impracticable.

b.     There are questions of fact or law common to the class predominating over all questions affecting only individual class members, including:

i.     Whether Defendant engaged in a pattern of sending unsolicited fax advertisements;

11

ii.     Whether Defendant sent faxes without obtaining the recipients' prior express permission or invitation of the faxes;

iii.    The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibits 1 – 2 and other unsolicited faxed advertisements;

iv.     Whether Defendant committed the tort of conversion; and

v.      Whether Plaintiff and the other class members are entitled to recover actual damages and other appropriate relief.

52.     Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff has retained counsel who is experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the class.

53.     A class action is the superior method for adjudicating this controversy fairly and efficiently. The interest of the individual class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

54.     By sending Plaintiff and the other class members unsolicited faxes, Defendant improperly and unlawfully converted their fax machines, toner and paper to its own use. Defendant also converted Plaintiff's employees' time to Defendant's own use.

55.     Immediately prior to the sending of the unsolicited faxes, Plaintiff, and the other class members owned an unqualified and immediate right to possession of their fax machine, paper, toner, and employee time.

12

56.     By sending the unsolicited faxes, Defendant permanently misappropriated the class members' fax machines, toner, paper, and employee time to Defendant's own use.   Such misappropriation was wrongful and without authorization.

57.     Defendant knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

58.     Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose.   Plaintiff and each class member thereby suffered damages as a result of the sending of unsolicited fax advertisements from Defendant.

59.     Each of Defendant's unsolicited fax advertisements effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendant's unlawful faxes.   Defendant knew or should have known employees' time is valuable to Plaintiff.

60.     Defendant's actions caused damages to Plaintiff and the other members of the class because their receipt of Defendant's unsolicited fax advertisements caused them to lose paper and toner as a result.   Defendant's actions prevented Plaintiff's fax machines from being used for Plaintiff's business purposes during the time Defendant was using Plaintiff's fax machines for Defendant's unlawful purpose.   Defendant's actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendant's unlawful faxes, and that time otherwise would have been spent on Plaintiff's business activities.

13

WHEREFORE, Plaintiff, CRITCHFIELD PHYSICAL THERAPY, P.C., individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendant, TECHHEALTH, INC., as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award fair and reasonable damages to Plaintiff and the Class;

C.    That the Court award costs of suit to Plaintiff and the Class;

D.    That the Court award plaintiff its attorney fees and all expenses incurred in preparing and prosecuting this claim; and

E.    Awarding such further relief as the Court may deem just and proper, but in any event, less than $75,000.00 to any individual class member inclusive of all damages.

## COUNT III
## MISSOURI CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### Chapter 407

61.    Plaintiff incorporates Paragraphs 3 and 4, and 10 through 32 as for its paragraph.

62.    In accordance with Chapter 407, Plaintiff, on behalf of the following class of persons, bring Count III for Defendant's unfair practice of sending unsolicited and unlawful fax advertisements:

> All persons who on or after four years prior to the filing of this action, were sent telephone facsimile messages by or on behalf of Defendant with respect to whom Defendant cannot provide evidence of prior express permission or invitation.

14

63.     A class action is proper in that:

a.      On information and belief the class consists of thousands of persons in Missouri and is so numerous that joinder of all members is impracticable.

b.      There are questions of fact or law common to the class predominating over all questions affecting only individual class members including:

      i.      Whether Defendant engaged in a pattern of sending unsolicited fax advertisements;

      ii.     The manner and method Defendant used to compile or obtain the list of fax numbers to which it sent Exhibits 1 – 2 and other unsolicited faxed advertisements;

      iii.    Whether Defendant's practice of sending unsolicited faxed advertisements violates Missouri public policy;

      iv.     Whether Defendant's practice of sending unsolicited faxes is an unfair practice under the Missouri Merchandising Practices Act (MMPA), Chapter 407 RSMO; and

      v.      Whether Defendant should be enjoined from sending unsolicited fax advertising in the future.

64.     Plaintiff will fairly and adequately protect the interests of the other class members. Plaintiff has retained counsel who are experienced in handling class actions and claims involving lawful business practices.  Neither Plaintiff nor Plaintiff's counsel have any interests adverse or in conflict with the class.

65.     A class action is an appropriate method for adjudicating this controversy fairly and efficiently.  The interest of the individual class members in individually controlling the prosecution of separate claims is small and individual actions are not economically feasible.

66.     Defendant's unsolicited fax practice is an unfair practice, because it violates public policy, and because it forced Plaintiff and the other class members to incur expense without any consideration in return.   Defendant's practice effectively forced Plaintiff and the other class members to pay for Defendant's advertising campaign.

67.     Defendant violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri public policy, which public policy violations in the aggregate caused substantial injury to hundreds of persons.

68.     Defendant's misconduct caused damages to Plaintiff and the other members of the class, including the loss of paper, toner, ink, use of their facsimile machines, and use of their employees' time.

69.     Defendant's actions caused damages to Plaintiff and the other class members because their receipt of Defendant's unsolicited fax advertisements caused them to lose paper and toner consumed as a result. Defendant's actions prevented Plaintiff's fax machine from being used for Plaintiff's business purposes during the time Defendant was using Plaintiff's fax machine for Defendant's unlawful purpose.   Defendant's actions also cost Plaintiff employee time, as Plaintiff's employees used their time receiving, routing, and reviewing Defendant's unlawful faxes and that time otherwise would have been spent on Plaintiff's business activities.

## PRAYER

WHEREFORE, Plaintiff, CRITCHFIELD PHYSICAL THERAPY, P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendant, TECHHEALTH, INC., as follows:

A.   That the Court adjudge and decree that the present case may be properly maintained as a class action for Count I, Count II and Count III, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class;

B.   That the Court award damages to Plaintiff and the other class members;

C.   That the Court award treble damages to Plaintiff and the other class members for knowing violations of the TCPA;

D.   That the Court declare that Defendant's conduct violated the TCPA and that this action is just and proper;

E.   That the Court award damages for conversion of the plaintiffs and the class for violation of their rights;

F.   That the Court award damages and attorney fees for violation of Chapter 407;

G.   That the Court award attorney fees and costs;

H.   That the Court award all expenses incurred in preparing and prosecuting these claims;

I.   That the Court enter an injunction prohibiting Defendant from sending faxed advertisements; and

J.     Awarding such further relief as the Court may deem just and proper, but in any
event, less than $75,000.00 to any individual class member inclusive of all
damages.

Respectfully submitted,

Max G. Margulis, #24325
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022
F: (636) 536-6652
E-Mail: MaxMargulis@MargulisLaw.com
*Attorneys for Plaintiff*

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Phone: (847) 368-1500
Fax: (847) 368-1501
E-Mail: bwanca@andersonwanca.com

Phillip A. Bock #6224502
Bock & Hatch, LLC
134 North LaSalle
Chicago, IL 60602
P: (312) 658-5500
F: (312) 658-5555
Email: phil@bockhatchllc.com

From: 813-490-1921   To: 15735648241   Page: 1/1   Date: 1/6/2009 2:40:18 AM

*Critchfield Physical Therapy*

781\

# Durable Medical Equipment

## As a valued TechHealth partner we invite you to consider the opportunity for additional savings to your organization.

### Personal & Professional TENS Units



$24.00

**TechHealth Analog TENS Unit**
Personal Model



$33.00

**TechHealth Digital TENS Unit**
Personal Model



$415.00

**TechHealth Quattro EMS**
Professional Model

**TENS supplies:** electrodes, batteries, skin preps, lead wires.
**Other units & supplies available:** Galvanic HV, Interferential, Ultrasound

**Also Available**

**Orthopedic Braces**
- Cervical Collar
- Cock-Up Wrist Splint
- Double Pull Back Belt
- Ankle & Knee Support

**Pillows & Support**
- Inclination Pillow
- Travel Pillow
- Memory Foam Pillow
- Jackson Roll
- Seat Back Cushion

**Call us today!**

For more information on these and other products and pricing please send inquires to:

**E-Mail**
TechHealthDME@TechHealth.com

**Toll Free Phone**
1-877-611-3415 ext. 1294

**Fax**
1-813-490-1915



**TechHealth** ™
*Simplifying the Process of Care*

**Call us toll free today! 1-877-611-3415 ext. 1294**



EXHIBIT 1

833 *a*

Critchfield PT

**FAX TRANSMISSION**

From: TechHealth Fax-SMTP@techhealth.com



EXHIBIT 2a

833 

Crutchfild PT

# Electrotherapy Equipment

**As a valued TechHealth partner we invite you to consider the opportunity for additional savings to your organization. "Buy More, Pay Less"**

## Electrotherapy Devices

| | 1–5 units | 6–10 units | 11–15 units |
|---|---|---|---|
| TENS Analog Unit (Personal) | 24.00 | 22.50 | 21.25 |
| TENS Digital Unit (Personal) | 33.00 | 32.00 | 30.75 |
| EMS Analog Unit (Personal) | 32.00 | 29.75 | 28.50 |
| EMS Digital Unit (Personal) | 40.50 | 37.75 | 35.75 |
| Interferential Unit (Personal) | 119.00 | 112.50 | 106.25 |
| Galvanic HV Unit (Personal) | 175.00 | 165.00 | 156.00 |
| Portable Ultrasound Unit (Personal) | 63.00 | 59.00 | 56.00 |
| Quattro Digital Unit (Clinical) | 415.00 | 392.00 | 371.00 |

## Electrotherapy Supplies

| | 1–9 pkgs | 10–49 pkgs | 50+ pkgs |
|---|---|---|---|
| 1.5"x 1.5" Square Electrode (4 ct) | 2.00 | 1.90 | 1.80 |
| 2"x 2" Square Electrode (4 ct) | 2.30 | 2.15 | 2.05 |
| 2"x 2.35" Square Electrode (4 ct) | 3.70 | 3.50 | 3.30 |
| 3" Round Electrode (4 ct) | 3.70 | 3.50 | 3.30 |
| 1.5"x 14" Electrode (1 ct) | 5.55 | 5.25 | 4.95 |
| 4"x 6" Electrode (1 ct) | 5.00 | 4.70 | 4.45 |
| Alcohol Prep Wipes (100 ct) | 3.25 | 3.00 | 2.75 |
| TENS Vitamin E Lotion (2 oz) | 2.75 | 2.55 | 2.35 |
| TENS Vitamin E Lotion (12oz) | 5.50 | 5.25 | 5.00 |
| Pain Relieving Roll-On (3 oz) | 3.75 | 3.60 | 3.45 |
| 45" Lead Wire | 3.25 | 3.05 | 2.95 |
| 9V Rechargeable Battery | 5.25 | 5.20 | 5.15 |
| 9V Battery Charger | 7.50 | 7.30 | 7.00 |

No Minimum Required

**Call us toll free today! 1-800-574-6786 ext. 1237**
**Email: TechHealthDME@TechHealth.com**



TechHealth™
Simplifying the Process of Care

EXHIBIT 26

STATE OF MISSOURI          )
                           )
ST. LOUIS COUNTY           )

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

CRITCHFIELD PHYSICAL THERAPY, P.C.,
individually and on behalf of all others similarly-
situated,

      Plaintiff,

v.

TECHHEALTH, INC.,

      Defendant.

Cause No. _____

Division

## MOTION FOR CLASS CERTIFICATION

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, by and through its undersigned counsel, and for its Motion for Class Certification, states

1.     This cause should be certified as a class because all of the necessary elements of Rule 52.08 are met.

2.     Plaintiff requests that the Court certify a class, so the common claims of the Class members, based on a uniform legal theory and factual allegations applicable to all Class members, can be resolved on a class-wide basis.

3.     Plaintiff proposes the following Class definition:

> All persons who on or after four years prior to the filing of this action, were sent telephone facsimile messages of material advertising products or services by or on behalf of Defendant.

4.     Under Rule 52.08(a)(1), to bring a Class action, the Class must be "so numerous that joinder of all members is impracticable." Rule 52.08(a)(1). Here, there are at least hundreds of persons who fall within the Class definition. Thus, the

numerosity requirement of Rule 52.08(a)(1) is satisfied.

5.    There are questions of law or fact common to the Class members.

6.    The claims or defenses of the representative parties are typical of the claims or defenses of this Class.

7.    Plaintiff and its counsel will fairly and adequately protect the interest of the Class.

8.    Common issues of law or fact predominate over any individual issues, and a class action is the superior method for the fair and efficient adjudication of this controversy.

9.    Plaintiff requests additional time to file its supporting Memorandum of Law because the Plaintiff has outstanding discovery related to class certification.

WHEREFORE, Plaintiff prays that this Court certify this case as a class action and further pray that the Court appoint Plaintiff as Class Representative, appoint Plaintiff's attorneys Class Counsel; that this Court allow Plaintiff additional time, for completion of discovery related to class certification issues, to file its Memorandum of Law in Support of this Motion; and for such other and further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

_Max B. Margulis_

Max G. Margulis, #24325
MARGULIS LAW GROUP
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022
F: (636) 536-6652
E-Mail: MaxMargulis@MargulisLaw.com

<u>Of Counsel</u>
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Phone: (847) 368-1500
Fax: (847) 368-1501
E-Mail: bwanca@andersonwanca.com

Phillip A. Bock #6224502
Bock & Hatch, LLC
134 North LaSalle
Chicago, IL 60602
P: (312) 658-5500
F: (312) 658-5555
Email: phil@bockhatchllc.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to the Defendant Techhealth, Inc. by the process server.

3

## THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

### Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case.   However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.  These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

(1) **Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the partes.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

CCADM73

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

### Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms.  You should ask your lawyer for further information.

CCADM73

STATE OF MISSOURI          )
                           )
COUNTY OF ST. LOUIS        )

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

CRITCHFIELD PHYSICAL THERAPY, P.C.,
individually and on behalf of all others
similarly-situated,

        Plaintiff,

v.

TECHHEALTH, INC.,

        Defendant.

Cause No. 11SL-CC05052

Division 7

## PLAINTIFF'S FIRST SET OF INTERROGATORIES
## DIRECTED TO DEFENDANT TECHHEALTH, INC.

**COMES NOW** Plaintiff and in accordance with Missouri Supreme Court Rule 57.01, hereby requests that Defendant Techhealth, Inc. answer, fully and separately, under oath, the following interrogatories within thirty (30) days from the date of service hereof. These discovery requests are deemed continuing to the full extent authorized by Rule 56.01(e).

### DEFINITIONS AND INSTRUCTIONS

1.    Unless stated otherwise, these Interrogatories cover the time period running from five years prior to the date of the original Complaint in this matter through trial in this matter.

2.    The term "Class Period" means the time period running from four years prior to the date of the original Complaint in this matter to present.

3.    A request to "fully identify" any person means to state that person's full name,

1

including middle name and suffixes, current address, and current telephone number. If either a current address or current telephone number is not known, a request to "fully identify" any person means to state all known addresses including former addresses, and phone numbers for such person, that person's date of birth, and any other information in your possession that is of a type to assist in contacting that person and/or to differentiate that person from a list of persons with a similar name.

4.     "Defendant" or "you" means  Techhealth, Inc. or any of its agents, employees, shareholders, officers, directors, or anyone Defendant has engaged or retained in any way to transmit facsimile transmissions.

5.     "Established Business Relationship" or "EBR" means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity.

6.     "Communication" means any exchange of information, whether orally or in writing, and includes, but is not limited to, telephonic communication, audiovisual communication, radio transmission, television transmission, data transmission and all forms of written information and documents.

7.     "Document" means anything in or upon which information may be fixed and can be perceived, reproduced or otherwise communicated, with or without the aid of any machine or device and regardless of the medium of expression in which the information is fixed (e.g., print, video, audio, computer diskette, magnetic tape), including but not limited to, the following: contracts, agreements, insurance plans, insurance policies, papers, photographs, tape recordings, transcripts, computer diskettes, computer drives, hard drives, mainframes or any other kind of database or data

2

stored in a computer in any manner (including any coding information necessary to gain access to any such computer information), videotapes, documents filed with any state or federal regulatory or administrative agency or entity, annual reports, shareholder agreements, letters, correspondence, memoranda, diaries, journals, corporate forms, faxes, telegrams, photographs, court papers, financial reports, financial statements, annual reports, checks, check books, check stubs, check statements, bank statements, deposit slips, journals, general and subsidiary ledgers, worksheets, accounts, bills, promissory notes, invoices, punch cards, purchase orders, acknowledgments, authorizations, sales slips, receipts, shipping papers, telex and other teletype communications, computer printouts, any other printout sheets, movie film, slides, microfilm, reports (including appraisal reports), studies, summaries, minutes of meetings, minute books, circulars, notes (whether typewritten, handwritten or otherwise), agendas, bulletins, notices, announcements, proofs, sheets, instructions, charts, tables, manuals, brochures, magazines, pamphlets, lists, visitors' logs, schedules, price lists, engineering and/or architectural drawings, sketches, plans, blueprints, specifications, diagrams, drafts, books and records, desk calendars, notebooks, registers, appointment books, budgets, analyses, projections, tax returns and all other data compilations from which information can be obtained or translated, regardless of whether such materials are in Defendant's possession or are in the possession of Defendant's present or former officers, agents, servants, employees, representatives, attorneys or other persons acting on their behalf. The term "document" also includes all drafts and/or copies of any of the foregoing materials that do not conform to the original or final version in any way, in that they contain any mark, alteration or additional writing or other change from the original or final version.

8.      "Person" refers to individuals, partnerships, associations, corporations, governmental

3

bodies, and all subparts (e.g., subsidiaries, agencies, or departments) of any such entity.

9.     "Meeting" refers to any gathering of two or more persons where any face-to-face oral communication takes place or any written communication is exchanged by hand.

10.     "Contact" means any meeting, communication, signaling, or interaction of persons, by whatever means made or done, regardless of whether an exchange of information took place.

11.     "Thing" refers to all material within the broadest permissible meaning of the word.

12.     "Concerning" means relating, referring to, describing, evidencing or constituting.

13.     "Referring or relating" means to make a statement about, discuss, describe, show, reflect, concern, identify, constitute, consist of, or pertain to, in whole or in part, the subject.

14.     Any undefined word or term is to be understood according to its commonly accepted meaning.  Please consult with Plaintiff's counsel in the event that Defendant or its counsel has difficulty understanding the meaning of any term as it is used in these Interrogatories.

15.     Singular nouns and pronouns shall be deemed to include their plurals and plural nouns and pronouns shall be deemed to include their singulars.

16.     All nouns and pronouns used herein shall be deemed to be gender neutral and to include all persons regardless of sex.

17.     If Defendant cannot respond to any Interrogatory in full after exercising due diligence to secure any information needed to provide an answer, please state the reason(s) for the inability to respond and the efforts undertaken to secure the information sought.

18.     If Defendant objects to responding to any portion of these Interrogatories, please (a) state the legal basis and the factual basis for each such objection and (b) Fully identify with reasonable particularity the subject matter of the information as to which Defendant believes the

4

objection applies.

19.     If any response is withheld on grounds of privilege, work product, or otherwise, for each such response, set forth a privilege log and state the reason for withholding the response and the factual basis for such reason, with sufficient particularity to allow Plaintiff to assess the validity of the reason and, if necessary, for the court to rule on it.

20.     Notwithstanding the assertion of an objection on the grounds of privilege, any purportedly privileged response containing non-privileged matter must be provided, with the purportedly privileged portion expressly redacted.

21.     If Defendant contends that responding to any Interrogatory would impose an undue burden upon it, Defendant shall specify in detail how responding would impose such a burden and respond to the Interrogatory to the broadest extent possible without engaging in the activities claimed to be unduly burdensome.

22.     If Defendant contends that any Interrogatory is overly broad, Defendant shall specify with precision the way in which it contends the Interrogatory is overly broad, specify what narrower interpretation of the Interrogatory would be acceptable, and then respond to the Interrogatory on the basis of such a narrower interpretation of it.

23.     If Defendant's response to the Interrogatory would be different for different time frames within the Class Period, Defendant shall state each time frame for which the response would be different, and specify the correct response for each such time frame.

24.     Defendant must furnish an Affidavit stating whether production is complete in accordance with this Interrogatory. In that Affidavit, Defendant must state whether or not it (or its counsel) is withholding any information that might be or could be relevant to the issues in this case

based on any legally recognized privilege, including the attorney-client privilege and the attorney-work product privilege. If such information is being withheld, then state in the Affidavit of Compliance the date, author, routing of the documents, if any type of document, and title of document.

25.    In its Affidavit, Defendant should specify what responses are being provided with respect to each numbered Interrogatory, and each of the responses shall be marked with the corresponding number of the paragraph documenting such information in the Interrogatory.

26.    These Interrogatories are to be considered as continuing in duration. Defendant is instructed to provide-by way of supplemental responses as Defendant may hereafter obtain that will augment or otherwise modify Defendant's responses in response to these Interrogatories.

## INTERROGATORIES

1.    Fully identify each person involved in answering these Interrogatories, including persons who you consulted or who provided information relied on by you in answering any Interrogatory, and state the information supplied by each such person.

**RESPONSE:**

2.    State whether Defendant, or any other entity acting on Defendant's behalf, has utilized facsimile transmissions delivered by telephone during the Class Period which either (1) were used for any advertising or promotional purpose, or (2) which advertised any property, goods, or services, and describe in detail the content of each different document sent by such transmissions and the time period each different document was sent.

**RESPONSE:**

3.    State whether any facsimile transmissions identified in Interrogatory 2 were sent to the telephone number 573-564-8241 during the Class Period and state the dates such transmissions were sent.

**RESPONSE:**

4.     State whether Defendant sent two or more interstate telephone facsimile transmissions in the 24 month period immediately prior to the date Defendant received service of this lawsuit, as part of any program, campaign, or other plan conducted to induce the purchase of any goods or services.

**RESPONSE:**

5.     Fully identify all persons with knowledge of the facsimile transmissions identified in Interrogatory 2 or the documents sent by such transmissions.

**RESPONSE:**

6.     Fully identify all employees, name, title and length of employment who had to do with the fax advertising.

**RESPONSE:**

7.     Fully describe all facts regarding the facsimile transmissions identified in Interrogatory 2.

**RESPONSE:**

8.     Fully identify each person who was in any way involved in the facsimile transmission(s) identified in Interrogatory 3, and identify the telephone number of the telephone line used by the sending device, the address where the sending device was located at the time each call was made, the make, model, manufacturer, and serial number of the sending device, the owner of the sending device, and the owner's telephone number.

**RESPONSE:**

9.     If Defendant contends any person gave any form of invitation, consent, or permission to receive any facsimile transmissions sent by or on behalf of Defendant to telephone number 573-564-8241, then fully identify each person involved in obtaining that invitation, consent, or permission, each person who provided that invitation, consent, or permission, each person involved in maintaining a log or other record of that invitation, consent, or permission, and set forth the date(s) on which that invitation, consent, or permission was obtained.

7

**RESPONSE:**

10. If Defendant contends an "Established Business Relationship" ("EBR") existed between Defendant and Plaintiff (or any other person Defendant believes was associated with telephone number 573-564-8241) at the time of any facsimile transmissions sent to telephone number 573-564-8241, then fully identify each person involved in the creation of that EBR, all facts supporting the existence of such an EBR, the date(s) on which such EBR was formed, and each person involved in maintaining a log or other record of such EBR.

**RESPONSE:**

11. Other than any facsimile transmissions to phone number 573-564-8241, identify the telephone numbers to which any facsimile transmissions identified in Interrogatory 2 were sent during the Class Period and the date on which each such transmission was made.

**RESPONSE:**

12. Other than any facsimile transmissions to phone number 573-564-8241, for each call made by or on behalf of Defendant which used facsimile transmissions identified in Interrogatory 2, identify the telephone number of the telephone line used by the sending device, the address where the sending device was located at the time each call was made, the make, model, and serial number of the sending device, the owner of the sending device, and the owner's telephone number.

**RESPONSE:**

13. Fully identify each and every person who participated in Defendant's decision to send facsimile transmissions identified in Interrogatory 2, and state the extent and substance of each such person's participation therein.

**RESPONSE:**

14. State whether, prior to the date Defendant received notice of this lawsuit, whether any consideration was given by Defendant to the legal restrictions on the use of facsimile transmissions identified in Interrogatory 2, and if so, describe in detail the substance of all such considerations, the dates thereof, and the identity of the persons involved therein.

**RESPONSE:**

8

15.     Fully identify the telephone service provider(s) that provided telephone service for the device(s) used to transmit facsimile transmissions identified in Interrogatory 2, stating the name, address, and account number of Defendant with that provider, and state the time period relevant to each such telephone service provider.

**RESPONSE:**

16.     Fully identify the telephone service provider that provided telephone service for the machine used to transmit the facsimile transmission(s) identified in Interrogatory 3.

**RESPONSE:**

17.     If Defendant operated any device used to send any facsimile transmissions identified in Interrogatory No. 2 during the Class Period, state 1) the number of occasions Defendant engaged in such transmissions, and 2) for each such occasion, state the number of individual facsimile transmissions sent. If Defendant does not know the actual number of individual transmissions sent for any occasion, state the number of transmissions requested and/or expected to be sent on that occasion and the source of such information.

**RESPONSE:**

18.     If Defendant operated any device used to send any facsimile transmissions identified in Interrogatory No. 2, during the Class Period, fully describe the equipment and/or software used, including 1) the name and version of the software used on the device, 2) location of the device when used to send such transmissions, 3) the current location of the device, 4) the identity of all users of the device, 5) and the telephone numbers of each telephone line connected to the device when used to send such transmissions.

**RESPONSE:**

19.     If any person other than Defendant operated any device used to send any facsimile transmissions identified in Interrogatory No. 2 during the Class Period, for each such person state 1) the number of occasions each person engaged in such transmissions, and 2) for each such occasion, state the number of individual facsimile transmissions sent by that person. If Defendant does not know the actual number of individual transmissions sent for any occasion, state the number of transmissions requested and/or expected to be sent on that occasion and the source of such information.

9

**RESPONSE:**

20.     Identify the name, address, and telephone number of each person, other than Plaintiff, who provided any form of invitation, consent, or permission to receive facsimile transmissions initiated by or on behalf of Defendant that utilized a facsimile transmission identified in Interrogatory 2. State for each such person, the form and substance of such invitation, consent, or permission.

**RESPONSE:**

21.     Identify the name, address, and telephone number of each person, other than Plaintiff, with whom Defendant contends an EBR existed between Defendant and such person at the time of any facsimile transmissions sent to that person, and fully identify each person involved in the creation of that EBR, all facts supporting the existence of such an EBR, the date(s) on which such EBR was formed, and each person involved in maintaining a log or other record of such EBR.

**RESPONSE:**

22.     Fully identify every person, including name, address and phone number, other than Plaintiff, who has contacted Defendant to communicate a desire not to receive facsimile transmissions.

**RESPONSE:**

23.     Set forth the substance of all of Defendant's policies or procedures concerning the use of facsimile transmissions, and fully identify each person who has been involved in formulating or establishing such policies, where such policies where used or in effect at any time during the Class Period.

**RESPONSE:**

24.     Describe in detail how Defendant obtained or developed a list of persons and/or telephone numbers to which telephone calls have been initiated by or on behalf of Defendant that utilized a facsimile transmission identified in Interrogatory 2. Include in your response (1) whether Defendant came into possession of such list in any form, (2) if so, what happened to said list, (3) whether any portion of said list was obtained from a third party, and if so, from whom and what consideration was exchanged in order to obtain any portion of said list, and (4) whether any portion of any such list was generated by a computer using random or sequential numbers.

10

**RESPONSE:**

25.    If Defendant instructed any person to construct, develop, purchase, or otherwise use a list of persons and/or telephone numbers  to send any facsimile transmission identified in Interrogatory 2, describe in detail all directions and/or instructions given to such third party for determining the contents of such a list, including but not limited to 1) the area codes or states to be selected, 2) the SIC codes to be selected, and 3) any other selection or filtering criteria.

**RESPONSE:**

26.    If any entity other than Defendant operated the equipment used to send any facsimile transmissions identified in Interrogatory No. 2, state the name, address, and telephone number of each such entity, identify how Defendant became aware of each such entity, and describe in detail the contents of all communications between Defendant and each such entity.

**RESPONSE:**

27.    If any entity other than Defendant operated the equipment used to send any facsimile transmissions to 573-564-8241 on behalf of Defendant, state the name, address, and telephone number of each such entity, identify how Defendant became aware of each such entity, and describe in detail the contents of all communications between Defendant and each such entity.

**RESPONSE:**

28.    If you contend that any other entity or individual should be responsible for the actions complained of in this lawsuit, fully identify each such entity or individual and state all facts supporting such contention or regarding the entity's or individual's role in the actions complained of in this lawsuit.

**RESPONSE:**

29.    Set forth all of Defendant's document retention policies and procedures in effect during any portion of the Class Period.

**RESPONSE:**

30.    Without stating the content of any privileged communications, state whether you

11

consulted any person, organization, document, or other source of information, other than your attorney, at any time prior to service of this lawsuit, for the purposes of determining the legal restrictions on the use of facsimile transmissions for advertising.

**RESPONSE:**

31.     Without stating the content of any privileged communications, state whether you consulted your attorney, at any time prior to service of this lawsuit, for the purposes of determining the legal restrictions on the use of facsimile transmissions for advertising.

**RESPONSE:**

32.     Fully identify each person, organization, document, or other source of information, other than your attorney, you consulted at any time prior to service of this lawsuit, for the purposes of determining the legal restrictions on the use of facsimile transmissions for advertising.

**RESPONSE:**

33.     Fully identify each person whose was involved in the creation of any facsimile transmissions identified in Interrogatory 2, and state their relationship to Defendant.

**RESPONSE:**

34.     Fully identify all experts and/or opinion witnesses you have retained for the purposes of this litigation.

**RESPONSE:**

35.     Fully identify all persons, other than your attorneys, you have consulted with for the purposes of this litigation.

**RESPONSE:**

36.     Fully identify each document which was consulted by you in answering these interrogatories.

**RESPONSE:**

12

37.     If your answer to any Request to Admit is anything other than an unqualified "admit" set forth all facts you contend support each such answer.

**RESPONSE:**


38.     If you object to any Interrogatory, Request to Admit, or Request for Admission on the ground of privilege, fully identify each person(s) who prepared the privilege log.

**RESPONSE:**


39.     If you object to any Interrogatory, Request to Admit, or Request for Admission on the grounds that the answer would reveal information that is proprietary or a trade secret, fully identify the person(s) you contend has knowledge of the facts on which you base you assertion that such information is either proprietary or a trade secret.

**RESPONSE:**


40.     State the name and address of each witness who will testify at trial and state the anticipated subject of each witness' testimony.

**RESPONSE:**


41.     State whether Techhealth, Inc. is your true and correct legal name.

**RESPONSE:**


42.     State whether Defendant has been sued in its proper legal name and capacity.

**RESPONSE:**


43.     State whether any insurance policy, including umbrella policies, were in effect during any portion of the Class Period.

**RESPONSE:**


13

44.    If any insurance policies, including umbrella policies, were in effect during any portion of the Class Period, state the policy number, the issuing carrier, the dates of coverage and policy limits for each such policy.

**RESPONSE:**

45.    If your response to any interrogatory identifies a person for which you have not provided or do not know that person's current address and telephone number, for each such person, set forth 1) all known addresses including former addresses for that person, 2) all phone numbers known for such person, 3) that person's date of birth, 4) that person's Social Security Number, 5) all aliases or alternative names for that person, and 6) any other information in your possession that is of a type to assist in contacting that person and/or to differentiate that person from a list of persons with a similar name.

**RESPONSE:**

*Max G. Margulis*

Max G. Margulis, #24325
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022
F: (636) 536-6652
E-Mail: MaxMargulis@MargulisLaw.com
*Attorneys for Plaintiff*

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Phone:  (847) 368-1500
Fax:  (847) 368-1501
E-Mail: bwanca@andersonwanca.com

Phillip A. Bock #6224502
Bock & Hatch, LLC
134 North LaSalle
Chicago, IL 60602
P: (312) 658-5500
F: (312) 658-5555
Email: phil@bockhatchllc.com

14

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to the Defendant Techhealth, Inc. by the process server with a pdf and word version on a disc.

*Max G. Margulis*

STATE OF MISSOURI     )
                            )
COUNTY OF ST. LOUIS   )

## IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
## STATE OF MISSOURI

CRITCHFIELD PHYSICAL THERAPY, P.C.,
individually and on behalf of all others
similarly-situated,

       Plaintiff,

v.

TECHHEALTH, INC.,

       Defendant.

Cause No. 11SL-CC05052

Division 7

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
## OF DOCUMENTS DIRECTED TO DEFENDANT TECHHEALTH, INC.

**COMES NOW** Plaintiff and in accordance with Missouri Supreme Court Rule 58.01,

hereby requests that Defendant Techhealth, Inc. produce the following documents for inspection

and copying at the offices of the undersigned within thirty (30) days from the date of service hereof:

## DEFINITIONS AND INSTRUCTIONS

1.     Unless stated otherwise, these Requests cover the time period running from five

years prior to the date of the original Complaint in this matter through trial in this matter.

2.     The term "Class Period" means the time period running from four years prior to the

date of the original Complaint in this matter to present.

3.     The term "fully identify" applied to any person means to state that person's full

1

name, including middle name and suffixes, current address, and current telephone number. If either a current address or current telephone number is not known, a request to "fully identify" any person means to state all known addresses including former addresses, and phone numbers for such person, that person's date of birth, and any other information in your possession that is of a type to assist in contacting that person and/or to differentiate that person from a list of persons with a similar name.

4.    "Defendant" or "you" means Defendant Techhealth, Inc. or any of its agents, employees, shareholders, officers, directors, or anyone Defendant has engaged or retained in any way to transmit facsimile transmissions.

5.    "Established Business Relationship" or "EBR" means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity.

6.    "Communication" means any exchange of information, whether orally or in writing, and includes, but is not limited to, telephonic communication, audiovisual communication, radio transmission, television transmission, data transmission and all forms of written information and documents.

7.    "Document" means anything in or upon which information may be fixed and can be perceived, reproduced or otherwise communicated, with or without the aid of any machine or device and regardless of the medium of expression in which the information is fixed (e.g., print, video, audio, computer diskette, magnetic tape), including but not limited to, the following: contracts, agreements, insurance plans, insurance policies, papers, photographs, tape recordings, transcripts,

computer diskettes, computer drives, hard drives, mainframes or any other kind of database or data stored in a computer in any manner (including any coding information necessary to gain access to any such computer information), videotapes, documents filed with any state or federal regulatory or administrative agency or entity, annual reports, shareholder agreements, letters, correspondence, memoranda, diaries, journals, corporate forms, faxes, telegrams, photographs, court papers, financial reports, financial statements, annual reports, checks, check books, check stubs, check statements, bank statements, deposit slips, journals, general and subsidiary ledgers, worksheets, accounts, bills, promissory notes, invoices, punch cards, purchase orders, acknowledgments, authorizations, sales slips, receipts, shipping papers, telex and other teletype communications, computer printouts, any other printout sheets, movie film, slides, microfilm, reports (including appraisal reports), studies, summaries, minutes of meetings, minute books, circulars, notes (whether typewritten, handwritten or otherwise), agendas, bulletins, notices, announcements, proofs, sheets, instructions, charts, tables, manuals, brochures, magazines, pamphlets, lists, visitors' logs, schedules, price lists, engineering and/or architectural drawings, sketches, plans, blueprints, specifications, diagrams, drafts, books and records, desk calendars, notebooks, registers, appointment books, budgets, analyses, projections, tax returns and all other data compilations from which information can be obtained or translated, regardless of whether such materials are in Defendant's possession or are in the possession of Defendant's present or former officers, agents, servants, employees, representatives, attorneys or other persons acting on their behalf.  The term "document" also includes all drafts and/or copies of any of the foregoing materials that do not conform to the original or final version in any way, in that they contain any mark, alteration or additional writing or other change from the original or final version.  **Please bate stamp all**

3

**documents provided in Request for Production.**

8.      "Person" refers to individuals, partnerships, associations, corporations, governmental bodies, and all subparts (e.g., subsidiaries, agencies, or departments) of any such entity.

9.      "Meeting" refers to any gathering of two or more persons where any face-to-face oral communication takes place or any written communication is exchanged by hand.

10.     "Contact" means any meeting, communication, signaling, or interaction of persons, by whatever means made or done, regardless of whether an exchange of information took place.

11.     "Thing" refers to all material within the broadest permissible meaning of the word.

12.     "Concerning" means relating, referring to, describing, evidencing or constituting.

13.     "Referring or relating" means to make a statement about, discuss, describe, show, reflect, concern, identify, constitute, consist of, or pertain to, in whole or in part, the subject.

14.     Any undefined word or term is to be understood according to its commonly accepted meaning.  Please consult with Plaintiff's counsel in the event that Defendant or its counsel has difficulty understanding the meaning of any term as it is used in these Requests.

15.     Singular nouns and pronouns shall be deemed to include their plurals and plural nouns and pronouns shall be deemed to include their singulars.

16.     All nouns and pronouns used herein shall be deemed to be gender neutral and to include all persons regardless of sex.

17.     Defendant is instructed to produce all requested documents that are in its possession, custody, or control, including (by way of illustration only and not limited to) documents in the possession, custody, or control of its affiliates or merged or acquired predecessors, or its present or former directors, officers, partners, employees, attorneys, or other agents, as well as its present or

4

former independent contractors over which it has control, and any other person acting on Defendant's behalf.

18.     All documents should be produced in their original folders, binders, or boxes, in the same order in which they are kept in the ordinary course of business, and shall be labeled to show their source (e.g., "from Mr. Smith's desk").

19.     If Defendant does not produce any documents requested below because they are not in Defendant possession, custody or control, then Defendant must disclose all known information that may lead to the discovery of such documents.

20.     Documents responsive to a particular Request should be segregated, with a note Fully identifying the Request to which the group of documents is responsive.  Documents produced pursuant to one Request need not be duplicated for production pursuant to a different Request.

21.     If Defendant cannot respond to any Request in full after exercising due diligence to secure any information needed to provide an answer, please state the reason(s) for the inability to respond and the efforts undertaken to secure the information sought.

22.     If Defendant objects to responding to any portion of these Requests, please (a) state the legal basis and the factual basis for each such objection and (b) Fully identify with reasonable particularity the subject matter of the information as to which Defendant believes the objection applies.

23.     If any document is withheld on grounds of privilege, work product, or otherwise, for each such response, set forth a privilege log and state the reason for withholding the response and the factual basis for such reason, with sufficient particularity to allow Plaintiff to assess the validity of the reason and, if necessary, for the court to rule on it.

5

24.     Notwithstanding the assertion of an objection on the grounds of privilege, any purportedly privileged response containing non-privileged matter must be provided, with the purportedly privileged portion expressly redacted.

25.     If Defendant contends that responding to any Request would impose an undue burden upon it, Defendant shall specify in detail how responding would impose such a burden and respond to the Request to the broadest extent possible without engaging in the activities claimed to be unduly burdensome.

26.     If Defendant contends that any Request is overly broad, Defendant shall specify with precision the way in which it contends the Request is overly broad, specify what narrower interpretation of the Request would be acceptable, and then respond to the Request on the basis of such a narrower interpretation of it.

27.     If Defendant's response to the Request would be different for different time frames within the Class Period, Defendant shall state each time frame for which the response would be different, and specify the correct response for each such time frame.

28.     Defendant must furnish an Affidavit stating whether production is complete in accordance with this Request.  In that Affidavit, Defendant must state whether or not it (or its counsel) is withholding any information that might be or could be relevant to the issues in this case based on any legally recognized privilege, including the attorney-client privilege and the attorney-work product privilege.  If such information is being withheld, then state in the Affidavit the date, author, routing of the documents, if any type of document, and title of document.

29.     In its Affidavit, Defendant should specify what responses are being provided with respect to each numbered Request, and each of the responses shall be marked with the corresponding number of the paragraph documenting such information in the Request.

30.     These Requests are to be considered as continuing in duration.  Defendant is instructed to provide-by way of supplemental responses as Defendant may hereafter obtain that will augment or otherwise modify Defendant's responses in response to these Requests.

**ANY OBJECTION BASED ON PRIVILEGE THAT IS NOT ACCOMPANIED BY A PROPER PRIVILEGE LOG ENTRY IS SUBJECT TO BEING OVERRULED WITHOUT CONSIDERATION OF THE MERITS OF THE OBJECTION.**

### DOCUMENTS REQUESTED

1.     Each different form of any document which promotes, advertises, announces, or solicits any property, goods, or services of Defendant which was sent by facsimile transmission during the Class Period.

**RESPONSE:**


2.     All documents indicating any person gave prior express permission or invitation, to receive facsimile transmissions of any document referred to in Request No. 1.

**RESPONSE:**


3.     All documents indicating an "Established Business Relationship" ("EBR") existed between Defendant and any person to whom any facsimile transmissions of any document referred to in Request No. 1 was sent.

**RESPONSE:**


4.     All of Defendant insurance policies, including umbrella policies, which were in effect during any portion of the Class Period.

**RESPONSE:**


5.     All correspondence to Defendant from any insurance company, broker, or agent, concerning or relating to a reservation of rights or a denial of coverage for the claims in this litigation.

7

**RESPONSE:**


6.    All correspondence from Defendant to any insurance company, broker, or agent, concerning or relating to a reservation of rights or a denial of coverage for the claims in this litigation.

**RESPONSE:**


7.    If Defendant contends Plaintiff consented in any way to receive any facsimile transmissions of any document sent by or on behalf of Defendant, then all documents that evidence such consent or which regard how such consent was sought or obtained.

**RESPONSE:**


8.    If Defendant contends an EBR existed between Defendant and Plaintiff at the time any facsimile transmissions of any document sent by or on behalf of Defendant was transmitted to 573-564-8241, then all documents that evidence such an EBR existed at that time.

**RESPONSE:**


9.    All documents identifying any other entity who sent any facsimile transmissions of any document, by or on behalf of Defendant, to 573-564-8241 during the Class Period.

**RESPONSE:**


10.    Any contract or advertising agreement entered into between Defendant and any third party, for the provision of fax broadcasting services to be provided by that third party during the Class Period.

**RESPONSE:**


11.    Any contract or advertising agreement entered into between Defendant and any third party, for the provision of fax broadcasting services to be provided by any other party during the Class Period.

**RESPONSE:**


8

12.     All documents exchanged between Defendant and any third party, regarding the fax broadcasting services provided by that third party to Defendant during the Class Period.

**RESPONSE:**

13.     All documents exchanged between Defendant and any third party, regarding the fax broadcasting services provided by any other party to Defendant during the Class Period.

**RESPONSE:**

14.     All records, invoices, receipts or other documents showing any fees or sums of money paid by Defendant to any third party, for fax broadcasting services rendered by that third party to Defendant during the Class Period.

**RESPONSE:**

15.     All records, invoices, receipts or other documents showing any fees or sums of money paid by Defendant to any third party, for fax broadcasting services provided by any other party to Defendant during the Class Period.

**RESPONSE:**

16.     All documents that indicate or tend to indicate the number of the transmissions of any document identified in Request Number 1 sent via facsimile by or on behalf of Defendant to telephone numbers during the Class Period.

**RESPONSE:**

17.     All telephone records which identify individual telephone calls for the telephone lines used to send facsimile transmissions by or on behalf of Defendant to phone number 573-564-8241 during the Class Period.

**RESPONSE:**

18.     All telephone records which identify individual telephone calls for each telephone line used to transmit any document identified in Request Number 1 via facsimile by or on behalf of Defendant, to telephone subscribers during the Class Period.

9

**RESPONSE:**

19.    Produce a mirror image of each hard drive of each device used send facsimile transmissions of any document identified in Request Number 1 during the Class Period.

**RESPONSE:**

20.    All documents that contain, refer to, set forth, or explain Defendant's policy or practice of obtaining prior express permission or invitation to send any document identified in Request Number 1 via facsimile to any person.

**RESPONSE:**

21.    All documents that contain, refer to, set forth, or explain Defendant's policies or practices regarding the transmission of any document identified in Request Number 1 via facsimile.

**RESPONSE:**

22.    All documents that contain, refer to, set forth, or explain Defendant's policies or practices regarding the sending of any advertising or promotional material via facsimile.

**RESPONSE:**

23.    All documents that contain, refer to, set forth or explain Defendant's policies or practices about maintaining a log or record showing any form of permission or invitation from any person to receive any document identified in Request Number 1 via facsimile.

**RESPONSE:**

24.    All documents that contain, refer to, set forth or explain Defendant's policies or practices about maintaining a log or record showing an EBR exists between Defendant and any person, and the date and manner such EBR was formed.

**RESPONSE:**

25.    Provide in the native electronic form, a copy of each document stored electronically

10

which contains any evidence of express invitation or permission to send facsimile transmissions to any person. If more than one version exists of any responsive document, provide a copy of each document as it existed when you received service of this suit and each different version that existed since that time.

**RESPONSE:**

26.    All documents that identify the recipients of any facsimile transmission of the documents attached to the Complaint as Exhibits 1-2.

**RESPONSE:**

27.    All documents that identify the fax numbers which were sent any facsimile transmission of the documents attached to the Complaint as Exhibits 1-2.

**RESPONSE:**

28.    Documents that Defendant reviewed or relied upon in answering the Interrogatories or Request to Admit Plaintiff directed to Defendant.

**RESPONSE:**

29.    All documents that identify persons involved in creating any facsimile transmissions sent to 573-564-8241.

**RESPONSE:**

30.    All documents that identify persons involved in creating any documents identified in Request Number 1.

**RESPONSE:**

31.    All documents that identify persons involved in the decision to use facsimile transmissions of the documents attached to the Complaint as Exhibits 1-2 to 573-564-8241.

**RESPONSE:**

11

32.    All documents that identify persons involved in creating Exhibits 1-2 (attached to the Complaint) during the Class Period.

**RESPONSE:**


33.    All invoices, bills, purchase orders, receipts, statements or other documents which set forth or identify the number, dates, charges, credits, offsets, or amounts owed to any third person for the creation or transmission by facsimile of any document identified in Request Number 1 during the Class Period.

**RESPONSE:**


34.    All cancelled checks, wire transfers, money orders, or any other documents evidencing any consideration used to compensate any person who was involved in the creation or transmission by facsimile of any document identified in Request Number during the Class Period.

**RESPONSE:**


35.    All correspondence with any person who was involved in the facsimile transmission of any document identified in Request Number 1 during the Class Period.

**RESPONSE:**


36.    All owner's manuals, guides, instructions, specification sheets, or other form of user's manual for the device used send facsimile transmissions of any document identified in Request Number 1 during the Class Period.

**RESPONSE:**


37.    All owner's manuals, guides, instructions, specification sheets, or other form of user's manual for any software used to operate any device for sending facsimile transmissions of any document identified in Request Number 1 during the Class Period.

**RESPONSE:**


38.    All documents which describe or compose any part of the list of persons and/or

12

telephone numbers to which any document identified in Request Number 1 was sent via facsimile during the Class Period.

**RESPONSE:**

39.     All documents which served as a source for any part of the list of persons and/or telephone numbers to which any document identified in Request Number 1 was sent via facsimile during the Class Period.

**RESPONSE:**

40.     All documents which describe how the list of persons and/or telephone numbers identified in Request No. 38 was developed or obtained.

**RESPONSE:**

41.     All documents which set forth or describe Defendant's document destruction and retention policies which were developed in, or which were used at any time during, the Class Period.

**RESPONSE:**

42.     All documents containing communications with any person or entity, other than your attorney, regarding any complaint or objection regarding advertisements sent by facsimile.

**RESPONSE:**

43.     All lawsuits, letters of inquiry, notices, or other forms of complaints filed against Defendant or received by Defendant attempting to allege a violation of the Telephone Consumer Protection Act.

**RESPONSE:**

44.     The computer(s) and software utilized to send facsimile transmissions of any document identified in Request Number 1 during the Relevant Time Period.

**RESPONSE:**

45.     All documents Defendant plans to introduce into evidence at trial.

**RESPONSE:**

46.     All documents Defendant plans to use for demonstrative purposes at trial.

**RESPONSE:**

47.     All documents Defendant plans to use for impeachment purposes at trial.

**RESPONSE:**

48.     All documents Defendant plans to use for rebuttal purposes at trial.

**RESPONSE:**

49.     All documents provided to any expert retained for the purposes of this litigation.

**RESPONSE:**

50.     All documents provided to any expert consulted for the purposes of this litigation.

**RESPONSE:**

51.     A copy of your most recent financial statement.

**RESPONSE:**

52.     A copy of your financial statement for the tax year 2009.

**RESPONSE:**

53.     A copy of your financial statement for the tax year 2008.

14

**RESPONSE:**

54.    A copy of your financial statement for the tax year 2007.

**RESPONSE:**

55.    A copy of all customer lists used during any portion of the Class Period.

**RESPONSE:**

_Max G. Margulis_

Max G. Margulis, #24325
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022
F: (636) 536-6652
E-Mail: MaxMargulis@MargulisLaw.com
*Attorneys for Plaintiff*

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Phone: (847) 368-1500
Fax: (847) 368-1501
E-Mail: bwanca@andersonwanca.com

Phillip A. Bock #6224502
Bock & Hatch, LLC
134 North LaSalle
Chicago, IL 60602
P: (312) 658-5500
F: (312) 658-5555
Email: phil@bockhatchllc.com

15

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to the Defendant Techhealth, Inc. by the process server with a pdf and word version on a disc.


_Max G. Margulis_

STATE OF MISSOURI      )
                              )
COUNTY OF ST. LOUIS   )

### IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS
### STATE OF MISSOURI

CRITCHFIELD PHYSICAL THERAPY, P.C.,
individually and on behalf of all others
similarly-situated,

        Plaintiff,

v.

TECHHEALTH, INC.,

        Defendant.

Cause No. 11SL-CC05052

Division 7

### PLAINTIFF'S FIRST SET OF REQUESTS TO ADMIT
### DIRECTED TO DEFENDANT TECHHEALTH, INC.

**COMES NOW** Plaintiff and in accordance with Missouri Supreme Court Rule 59.01, hereby requests that Defendant Techhealth, Inc. answer, fully and separately, under oath, the following request for admissions within thirty (30) days from the date of service of this discovery. FAILURE TO TIMELY RESPOND TO REQUESTS FOR ADMISSIONS IN COMPLIANCE WITH RULE 59.01 SHALL RESULT IN EACH MATTER BEING ADMITTED BY YOU AND NOT SUBJECT TO FURTHER DISPUTE. If these admissions have been issued prematurely they should be deemed as served on the first permissible date of service.

### DEFINITIONS AND INSTRUCTIONS

1.      Unless stated otherwise, these Requests cover the time period running from five years prior to the date of the original Complaint in this matter through trial in this matter.

1

2.     The term "Class Period" means the time period running from four years prior to the date of the original Complaint in this matter to present.

3.     The term "fully identify" applied to any person means to state that person's full name, including middle name and suffixes, current address, and current telephone number.  If either a current address or current telephone number is not known, a request to "fully identify" any person means to state all known addresses including former addresses, and phone numbers for such person, that person's date of birth, and any other information in your possession that is of a type to assist in contacting that person and/or to differentiate that person from a list of persons with a similar name.

4.     "Defendant" or "you" means Techhealth, Inc. or any of its agents, employees, shareholders, officers, directors, or anyone Defendant has engaged or retained in any way to transmit facsimile transmissions.

5.     "Established Business Relationship" or "EBR" means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity.

6.     "Communication" means any exchange of information, whether orally or in writing, and includes, but is not limited to, telephonic communication, audiovisual communication, radio transmission, television transmission, data transmission and all forms of written information and documents.

7.     "Document" means anything in or upon which information may be fixed and can be perceived, reproduced or otherwise communicated, with or without the aid of any machine or device and regardless of the medium of expression in which the information is fixed (e.g., print, video,

2

audio, computer diskette, magnetic tape), including but not limited to, the following: contracts, agreements, insurance plans, insurance policies, papers, photographs, tape recordings, transcripts, computer diskettes, computer drives, hard drives, mainframes or any other kind of database or data stored in a computer in any manner (including any coding information necessary to gain access to any such computer information), videotapes, documents filed with any state or federal regulatory or administrative agency or entity, annual reports, shareholder agreements, letters, correspondence, memoranda, diaries, journals, corporate forms, faxes, telegrams, photographs, court papers, financial reports, financial statements, annual reports, checks, check books, check stubs, check statements, bank statements, deposit slips, journals, general and subsidiary ledgers, worksheets, accounts, bills, promissory notes, invoices, punch cards, purchase orders, acknowledgments, authorizations, sales slips, receipts, shipping papers, telex and other teletype communications, computer printouts, any other printout sheets, movie film, slides, microfilm, reports (including appraisal reports), studies, summaries, minutes of meetings, minute books, circulars, notes (whether typewritten, handwritten or otherwise), agendas, bulletins, notices, announcements, proofs, sheets, instructions, charts, tables, manuals, brochures, magazines, pamphlets, lists, visitors' logs, schedules, price lists, engineering and/or architectural drawings, sketches, plans, blueprints, specifications, diagrams, drafts, books and records, desk calendars, notebooks, registers, appointment books, budgets, analyses, projections, tax returns and all other data compilations from which information can be obtained or translated, regardless of whether such materials are in Defendant's possession or are in the possession of Defendant's present or former officers, agents, servants, employees, representatives, attorneys or other persons acting on their behalf. The term "document" also includes all drafts and/or copies of any of the foregoing materials that do not conform to the original or final version in any way, in that

3

they contain any mark, alteration or additional writing or other change from the original or final version.

8.     "Person" refers to individuals, partnerships, associations, corporations, governmental bodies, and all subparts (e.g., subsidiaries, agencies, or departments) of any such entity.

9.     "Meeting" refers to any gathering of two or more persons where any face-to-face oral communication takes place or any written communication is exchanged by hand.

10.     "Contact" means any meeting, communication, signaling, or interaction of persons, by whatever means made or done, regardless of whether an exchange of information took place.

11.     "Thing" refers to all material within the broadest permissible meaning of the word.

12.     "Concerning" means relating, referring to, describing, evidencing or constituting.

13.     "Referring or relating" means to make a statement about, discuss, describe, show, reflect, concern, identify, constitute, consist of, or pertain to, in whole or in part, the subject.

14.     Any undefined word or term is to be understood according to its commonly accepted meaning.  Please consult with Plaintiff's counsel in the event that Defendant or its counsel has difficulty understanding the meaning of any term as it is used in these Requests.

15.     Singular nouns and pronouns shall be deemed to include their plurals and plural nouns and pronouns shall be deemed to include their singulars.

16.     All nouns and pronouns used herein shall be deemed to be gender neutral and to include all persons regardless of sex.

17.     Defendant is instructed to produce all requested documents that are in its possession, custody, or control, including (by way of illustration only and not limited to) documents in the possession, custody, or control of its affiliates or merged or acquired predecessors, or its present or

4

former directors, officers, partners, employees, attorneys, or other agents, as well as its present or former independent contractors over which it has control, and any other person acting on Defendant's behalf.

18.     All documents should be produced in their original folders, binders, or boxes, in the same order in which they are kept in the ordinary course of business, and shall be labeled to show their source (e.g., "from Mr. Smith's desk").

19.     If Defendant does not produce any documents requested below because they are not in Defendant's possession, custody or control, then Defendant must disclose all known information that may lead to the discovery of such documents.

20.     Documents responsive to a particular Request should be segregated, with a note Fully identifying the Request to which the group of documents is responsive.  Documents produced pursuant to one Request need not be duplicated for production pursuant to a different Request.

21.     If Defendant cannot respond to any Request in full after exercising due diligence to secure any information needed to provide an answer, please state the reason(s) for the inability to respond and the efforts undertaken to secure the information sought.

22.     If Defendant objects to responding to any portion of these Requests, please (a) state the legal basis and the factual basis for each such objection and (b) Fully identify with reasonable particularity the subject matter of the information as to which Defendant believes the objection applies.

23.     If any document is withheld on grounds of privilege, work product, or otherwise, for each such response, set forth a privilege log and state the reason for withholding the response and the factual basis for such reason, with sufficient particularity to allow Plaintiff to assess the validity of the reason and, if necessary, for the court to rule on it.

24.     Notwithstanding the assertion of an objection on the grounds of privilege, any purportedly privileged response containing non-privileged matter must be provided, with the purportedly privileged portion expressly redacted.

25.     If Defendant contends that responding to any Request would impose an undue burden upon it, Defendant shall specify in detail how responding would impose such a burden and respond to the Request to the broadest extent possible without engaging in the activities claimed to be unduly burdensome.

26.     If Defendant contends that any Request is overly broad, Defendant shall specify with precision the way in which it contends the Request is overly broad, specify what narrower interpretation of the Request would be acceptable, and then respond to the Request on the basis of such a narrower interpretation of it.

27.     If Defendant's response to the Request would be different for different time frames within the Class Period, Defendant shall state each time frame for which the response would be different, and specify the correct response for each such time frame.

28.     Defendant must furnish an Affidavit stating whether production is complete in accordance with this Request. In that Affidavit, Defendant must state whether or not it (or its counsel) is withholding any information that might be or could be relevant to the issues in this case based on any legally recognized privilege, including the attorney-client privilege and the attorney-work product privilege. If such information is being withheld, then state in the Affidavit the date, author, routing of the documents, if any type of document, and title of document.

29.     In its Affidavit, Defendant should specify what responses are being provided with respect to each numbered Request, and each of the responses shall be marked with the corresponding number of the paragraph documenting such information in the Request.

6

30.     These Requests are to be considered as continuing in duration.   Defendant is

instructed to provide-by way of supplemental responses as Defendant may hereafter obtain that will

augment or otherwise modify Defendant's responses in response to these Requests.

**ANY OBJECTION BASED ON PRIVILEGE THAT IS NOT ACCOMPANIED BY A
PROPER PRIVILEGE LOG ENTRY IS SUBJECT TO BEING OVERRULED WITHOUT
CONSIDERATION OF THE MERITS OF THE OBJECTION.**

## REQUESTS FOR ADMISSIONS

1.     Admit that the document attached to the petition as Exhibits 1-2 is a true and correct
copy of a facsimile transmission sent to the telephone number 573-564-8241 on or about January 6,
2009 and March 31, 2009.

**RESPONSE:**


2.     Admit that the document attached to the petition as Exhibits 1-2 were received at the
telephone number 573-564-8241 on or about January 6, 2009 and March 31, 2009.

**RESPONSE:**


3.     Admit that the documents attached to the petition as Exhibits 1-2 were received at
the telephone number 573-564-8241 on equipment which has the capacity to transcribe text or
images (or both) from an electronic signal received over a regular telephone line onto paper.

**RESPONSE:**


4.     Admit the documents attached to the petition as Exhibits 1-2 were sent by or on
behalf of Defendant to the telephone number 573-564-8241.

**RESPONSE:**


5.     Admit that Exhibits 1-2 describe the commercial availability of any property, goods,
or services.

**RESPONSE:**


6.     Admit that Defendant created the contents of the documents that were sent by fax

7

transmission resulting in Exhibits 1-2.

**RESPONSE:**

7.    Admit that Defendant had the ability to control the contents of the documents that were sent by fax transmission resulting in Exhibits 1-2.

**RESPONSE:**

8.    Admit that Defendant had the right to control the contents of the documents that were sent by fax transmission resulting in Exhibits 1-2.

**RESPONSE:**

9.    Admit that Exhibits 1-2 describe the quality of any property, goods, or services.

**RESPONSE:**

10.    Admit that during the Class Period, you or someone on your behalf has sent Exhibits 1-2 to more than 40 persons.

**RESPONSE:**

11.    Admit that during the Class Period, you or someone on your behalf has sent Exhibits 1-2 to more than 500 persons.

**RESPONSE:**

12.    Admit that during the Class Period, you or someone on your behalf has sent Exhibits 1-2 to more than 3000 persons.

**RESPONSE:**

13.    Admit that during the Class Period, you or someone on your behalf has sent Exhibits 1-2 to more than 4000 persons.

**RESPONSE:**

8

14.     Admit that during the Class Period, you or someone on your behalf has sent Exhibits 1-2 to more than 10,000 persons.

**RESPONSE:**

15.     Admit that all times during the class period, the telephone number 573-564-8241 was registered with the phone company to Plaintiff.

**RESPONSE:**

16.     Admit that all times during the class period, the telephone number 573-564-8241 was registered with the phone company as a business telephone line in the name of "Critchfield Physical Therapy, P.C.".

**RESPONSE:**

17.     Admit that you did not obtain prior express invitation or permissions to send any facsimile transmissions to the telephone number 573-564-8241.

**RESPONSE:**

18.     Admit that you did not obtain any form of consent, invitation, or permissions to send any facsimile transmissions to the telephone number 573-564-8241.

**RESPONSE:**

19.     Admit that neither you nor any person acting on your behalf had an established business relationship with Plaintiff or any other person associated with telephone number 573-564-8241 at the time Exhibits 1-2 were sent to that telephone number.

**RESPONSE:**

20.     Admit that you or someone on your behalf maintains a record of persons who provided any form of consent, invitation, or permissions to receive advertisements by facsimile machine and the dates such consent, invitation, or permissions.

**RESPONSE:**

9

21.     Admit that you have no factual basis to allege that you or any person acting on your behalf had prior express invitation or permission to send facsimiles containing material advertising the commercial availability or quality of your property, goods or services to telephone number 573-564-8241.

RESPONSE:


22.     Admit that you have no factual basis to allege that you or any person acting on your behalf had any form of consent or permission to send facsimiles containing material advertising the commercial availability or quality of your property, goods or services to telephone number 573-564-8241.

RESPONSE:


23.     Admit that you have no factual basis to allege that you or any person acting on your behalf had prior express invitation or permission to send facsimile transmissions during the Class Period containing material advertising the commercial availability or quality of your property, goods or services to telephone numbers.

RESPONSE:


24.     Admit that you have no factual basis to allege that you or any person acting on your behalf had any form of invitation or permission to send facsimile transmissions during the Class Period containing material advertising the commercial availability or quality of your property, goods or services to telephone numbers.

RESPONSE:


25.     Admit that neither you nor any person acting on your behalf engaged in any activities designed to obtain prior express invitation or permission to send facsimile transmissions during the Class Period containing material advertising the commercial availability or quality of your property, goods or services to telephone numbers.

RESPONSE:


26.     Admit that neither you nor any person acting on your behalf engaged in any activities designed to obtain any form of consent or permission to send facsimile transmissions during the Class Period containing material advertising the commercial availability or quality of your property, goods or services to telephone numbers.

**RESPONSE:**

27.    Admit that neither you nor any person acting on your behalf engaged in any activities that actually obtained prior express invitation or permission to send facsimile transmissions during the Class Period containing material advertising the commercial availability or quality of your property, goods or services to telephone numbers.

**RESPONSE:**

28.    Admit that neither you nor any person acting on your behalf engaged in any activities that actually obtained any form of consent or permission to send facsimile transmissions during the Class Period containing material advertising the commercial availability or quality of your property, goods or services to telephone numbers.

**RESPONSE:**

29.    Admit that Defendant's made an affirmative decision to send facsimile transmissions of Exhibits 1-2 to telephone numbers.

**RESPONSE:**

30.    Admit that prior to the date Defendant received notice of this lawsuit, Defendant did not give any consideration to the legal restrictions on the use of facsimile transmissions containing material advertising the commercial availability or quality of any property, goods, or services.

**RESPONSE:**

31.    Admit that Defendant operated the device used to send facsimile transmissions to telephone number 573-564-8241.

**RESPONSE:**

32.    Admit that a person other than Defendant operated the device used to send facsimile transmissions to telephone number 573-564-8241.

**RESPONSE:**

11

33.     Admit that the person that operated the device that sent facsimile transmissions of Exhibits 1-2 to telephone number 573-564-8241 did so on behalf of Defendant.

**RESPONSE:**

34.     Admit that during the Class Period, Defendant operated a device used to send facsimile transmissions that contained material advertising the commercial availability or quality of any property, goods, or services.

**RESPONSE:**

35.     Admit that during the Class Period, a person acting on behalf of Defendant operated a device used to send facsimile transmissions that contained material advertising the commercial availability or quality of any property, goods, or services.

**RESPONSE:**

36.     Admit that no person other than Plaintiff has contacted Defendant to communicate a desire not to receive facsimile transmissions.

**RESPONSE:**

37.     Admit that Defendant has no policies or procedures which were used or in effect at any time during the Class Period, that set forth any policies, procedures, rules, or other guidelines for the use of facsimile transmissions.

**RESPONSE:**

38.     Admit that Defendant obtained or developed a list of persons and/or telephone numbers  to which telephone calls have been initiated by or on behalf of Defendant that utilized facsimile transmissions of Exhibits 1-2.

**RESPONSE:**

39.     Admit that Defendant obtained or developed a list of persons and/or telephone numbers to which telephone calls have been initiated by or on behalf of Defendant that sent facsimile transmissions of material advertising the commercial availability or quality of any property, goods, or services.

**RESPONSE:**

40.     Admit that Defendant instructed another person to construct, develop, purchase, or otherwise use a list of persons and/or telephone numbers to send facsimile transmissions that contained material advertising the commercial availability or quality of any property, goods, or services.

**RESPONSE:**

41.     Admit that Defendant instructed another person to construct, develop, purchase, or otherwise use a list of persons and/or telephone numbers to send facsimile transmissions of Exhibits 1-2.

**RESPONSE:**

42.     Admit that Defendant had document retention policies and procedures which were in effect during any portion of the Class Period.

**RESPONSE:**

43.     Admit that Defendant did not consult with its attorney, at any time prior to service of this lawsuit, for the purposes of determining the legal restrictions on the use of facsimile transmissions for advertising.

**RESPONSE:**

44.     Admit that Defendant did not consult any person, organization, document, or other source of information, other than its attorney, at any time prior to service of this lawsuit, for the purposes of determining the legal restrictions on the use of facsimile transmissions for advertising.

**RESPONSE:**

45.     Admit Techhealth, Inc. is your true and correct legal name.

**RESPONSE:**

46.   Admit that Defendant has been sued in its proper legal name and capacity.

**RESPONSE:**

_Max G. Margulis_
Max G. Margulis, #24325
**MARGULIS LAW GROUP**
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P:  (636) 536-7022
F:  (636) 536-6652
E-Mail: MaxMargulis@MargulisLaw.com
*Attorneys for Plaintiff*

Of Counsel
Brian J. Wanca
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL  60008
Phone:  (847) 368-1500
Fax:  (847) 368-1501
E-Mail: bwanca@andersonwanca.com

Phillip A. Bock #6224502
Bock & Hatch, LLC
134 North LaSalle
Chicago, IL 60602
P: (312) 658-5500
F: (312) 658-5555
Email: phil@bockhatchllc.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent to the Defendant Techhealth, Inc. by the process server with a pdf and word version on a disc.

_Max G. Margulis_

14

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

CRITCHFIELD PHYSICAL
THERAPY, P.C., individually and on
behalf of all others similarly-situated,

      Plaintiff,                    Case No.:_____

v.

TECHHEALTH, INC.

      Defendant.

_____/

**AFFIDAVIT OF THOMAS R. SWEET**

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

      Before me, the undersigned authority, personally appeared THOMAS R. SWEET, who being known to me, and being duly sworn, deposes and says as follows:

      1.      I am over the age of eighteen and base this affidavit on personal knowledge.

      2.      I am the Chief Executive Officer of TechHealth, Inc. and have held this position since 2001.

      3.      TechHealth offers a broad range of ancillary medical services including diagnostic imaging, home health, physical therapy and supplemental services such as durable medical equipment ("DME"), pharmacy, orthotics, prosthetics and translation services.

4.      TechHealth represents insurers, employers, third party administrators, self-insured entities, and other organizations that provide medical and health care coverage pursuant to insurance payors.

5.      Since 2002, TechHealth has directly contracted with and credentialed medical professionals and top rated care centers around the country, known as its Vendor Network.

6.      In 2009, TechHealth started an in-house DME program for the benefit of their clients, customers, providers, medical professionals and care centers.

7.      As of December 23, 2011, TechHealth's Vendor Network included over 19,000 vendor locations.

8.      As of December 23, 2011, TechHealth's Vendor Network included 8,386 physical therapy medical professionals and care centers.

9.      TechHealth maintains a separate database of those vendors in its Vendor Network who have expressed interest in TechHealth's DME and have provided their fax number directly to TechHealth.

10.     As of December 23, 2011, TechHealth's DME database included 2,990 physical therapy medical professionals and care centers.

11.     Since January 1, 2009, the number of TechHealth vendors in its DME database has fluctuated based on vendors expressing interest in TechHealth's DME or vendors requesting removal from TechHealth's DME database.

12.     Since December 23, 2007, TechHealth has sent facsimile messages to vendors in TechHealth's Vendor Network regarding TechHealth's services.

13.     Since January 1, 2009, TechHealth has sent facsimile messages to physical therapy medical professionals and care centers in TechHealth's DME database regarding TechHealth's products.

FURTHER AFFIANT SAYETH NAUGHT.



Thomas R. Sweet

**SWORN TO** and subscribed before me on _13_ day of February, 2012 by **THOMAS R. SWEET**, [✓] who is known to me or [ ] who is not personally known to me and who produced as identification _____.

Notary Public

My Commission Expires:

THALIA BRYCE
Notary Public - State of Florida
My Comm. Expires Aug 25, 2014
Commission # EE 20992